UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

BRIAN BLAKELY,

                Plaintiff,

      v.

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.

No. 4:16-CV-05137-EFS

**ORDER GRANTING DEFENDANT'S SUMMARY JUDGMENT MOTION AND DENYING PLAINTIFF'S SUMMARY JUDGMENT MOTION**

Before the Court are cross summary judgment motions. ECF Nos. 17 & 18. Plaintiff Brian Blakely appeals a denial of benefits by the Administrative Law Judge (ALJ). ECF No. 17. Mr. Blakely contends that the ALJ (1) erroneously rejected the examining medical opinion of Jameson Lontz, Ph.D.; (2) erroneously rejected the opinion of Jared Holman, A.R.N.P.; and (3) failed to provide specific, clear, and convincing reasons for discrediting Mr. Blakely's symptom testimony. ECF No. 17 at 2. The Commissioner of Social Security (Commissioner) asks the Court to affirm the ALJ's decision that Mr. Blakely is capable of performing substantial gainful activity in a field for which a significant number of jobs exist in the national economy. ECF No. 18.

After reviewing the record and relevant authority, the Court is fully informed. For the reasons set forth below, the Court denies Plaintiff's Motion for Summary Judgment and grants Defendant's Motion for Summary Judgment.

## I. FACTS AND PROCEDURAL HISTORY[1]

Mr. Blakely was born in 1976. AR 168. He obtained his GED in 2006. AR 214. Mr. Blakely has significant employment history up until his alleged disability onset date of August 15, 2012, including working as an industrial truck operator, a laborer for stores, a material handler, a cannery worker, a cleaner housekeeper, a house mover-helper, and a van driver. AR 29-30, 50.

In 2000, Mr. Blakely suffered a traumatic brain injury when he fell from a ladder, which resulted in a seizure disorder and cognitive deficits. AR 300, 365. He was on disability until he returned to work in 2008. AR. 366. Mr. Blakely reports that he has difficulty with vertigo, hearing problems in the left ear, and double vision on the right side. AR 221.

Mr. Blakely spends his days watching television, fishing, doing chores, visiting others, and using the computer. AR 223-25. He reports that his parents assist him with cooking, shopping, and other chores. AR 222-25. Mr. Blakely also indicates that he frequently needs to have things repeated to him and requires hands on training. AR. 604.

---

[1] The facts are only briefly summarized. Detailed facts are contained in the administrative hearing transcript, the ALJ's decision, the parties' briefs, and the underlying records.

On August 16, 2012, Mr. Blakely protectively applied for disability insurance benefits, AR 168, and filed a claim for supplemental security income, AR 175. His alleged onset date was August 15, 2012. AR 168. Mr. Blakely's claims were denied initially and upon reconsideration. AR 79, 101. Mr. Blakely filed a written request for an administrative hearing, AR 113-14, which was held before ALJ Caroline Siderius on January 29, 2015, AR 40.

On June 11, 2015, the ALJ issued a decision denying Mr. Blakely's claims. AR 32. The Appeals Council denied review of the ALJ's decision. AR 1. On October 18, 2016, Mr. Blakely filed this lawsuit appealing the ALJ's decision. ECF Nos. 1 & 3. The parties subsequently filed the instant summary judgment motions. ECF Nos. 17 & 18.

## II. **DISABILITY DETERMINATION**

A "disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The decision maker uses a five-step sequential evaluation process to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920.

Step one assesses whether the claimant is engaged in substantial gainful activities during the relevant period. If he is, benefits are denied. 20 C.F.R. §§ 404.1520(b), 416.920(b). If he is not, the decision maker proceeds to step two.

Step two assesses whether the claimant has a medically severe impairment or combination of impairments. 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant does not have a severe impairment or combination of impairments, the disability claim is denied. If the impairment is severe, the evaluation proceeds to the third step.

Step three compares the claimant's impairment with a number of listed impairments acknowledged by the Commissioner to be so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404 Subpt. P App. 1, 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, 416.926. If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled. If the impairment does not meet or equal one of the listed impairments, the evaluation proceeds to the fourth step.

Step four assesses whether the impairment prevents the claimant from performing work he has performed in the past. This includes determining the claimant's residual functional capacity (RFC). 20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant is able to perform his previous work, he is not disabled. If the claimant cannot perform this work, the evaluation proceeds to the fifth step.

Step five, the final step, assesses whether the claimant can perform other work in the national economy in view of his age, education, and work experience. 20 C.F.R. §§ 404.1520(g), 416.920(g); *see Bowen v. Yuckert*, 482 U.S. 137 (1987).

The burden of proof shifts during this sequential disability analysis. The claimant has the initial burden of establishing a prima facie case of entitlement to disability benefits. *Rhinehart v.*

*Finch*, 438 F.2d 920, 921 (9th Cir. 1971). The claimant meets this burden if he establishes that a physical or mental impairment prevents him from engaging in his previous occupation. The burden then shifts to the Commissioner to show that (1) the claimant can perform other substantial gainful activity, and (2) a "significant number of jobs exist in the national economy" that the claimant can perform. *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir. 1984). A claimant is disabled only if his impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experiences, engage in any other substantial gainful work that exists in sufficient quantity in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

In this case, the ALJ determined that Mr. Blakely was not disabled. At step one, the ALJ determined that Mr. Blakely had not engaged in substantial gainful activity following his alleged disability onset date. AR 23. At step two, the ALJ found that Mr. Blakely has the following severe impairments: (1) seizure disorder, (2) mild memory loss, and (3) mood instability. AR 23. At step three, the ALJ found that Mr. Blakely's impairments did not meet or medically equal the severity of any listed impairments. AR 24. At step four, the ALJ found:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c) subject to the following limitations. The claimant can lift or carry 40 pounds occasionally and 20 pounds frequently. The claimant can perform work that does not require him to walk on uneven surfaces, climb ladders, ropes, or scaffolds, or work at unprotected heights. The claimant does not have any

limitations walking, sitting or standing. The claimant can perform work [that] does not require the operation of the machinery or equipment or the operation of foot pedals. He can perform work that does not require driving. He can perform simple repetitive tasks. He can tolerate occasional, brief, and non-collaborative contact with the public and coworkers. The claimant would need to have frequent brief breaks every 60 to 90 minutes for up to five minutes.

AR 25. This finding was based in part on the ALJ's determination that Mr. Blakely's statements "concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible." AR 26. The ALJ determined that Mr. Blakely could perform past relevant work as a cleaner housekeeper. AR 29. Accordingly, the ALJ concluded at step four that Mr. Blakely is not disabled.

Although the ALJ determined that Mr. Blakeley is not disabled at step four, she went on to make an "alternative" finding at step five that "considering the claimant's age, education, work experience, and residual functional capacity, there are other jobs that exist in significant numbers in the national economy that claimant also can perform." AR 30. Based on the vocational expert's testimony, the ALJ found that Mr. Blakely would be able to work as a cafeteria attendant.

### III. **STANDARD OF REVIEW**

On review, the Court considers the record as a whole, not just the evidence supporting the ALJ's decision. *Weetman v. Sullivan*, 877 F.2d 20, 22 (9th Cir. 1989) (quoting *Kornock v. Harris*, 648 F.2d 525, 526 (9th Cir. 1980)). The Court upholds the ALJ's determination that the claimant is not disabled if the ALJ applied the proper legal standards and there is substantial evidence in the record as a whole

to support the decision. *Delgado v. Heckler*, 722 F.2d 570, 572 (9th Cir. 1983) (citing 42 U.S.C. § 405(g)); *Brawner v. Sec'y of Health & Human Servs.*, 839 F.2d 432, 433 (9th Cir. 1987). Substantial evidence is more than a mere scintilla, *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975), but less than a preponderance, *McAllister v. Sullivan*, 888 F.2d 599, 601-02 (9th Cir. 1989); *Desrosiers v. Sec'y of Health & Human Servs.*, 846 F.2d 573, 576 (9th Cir. 1988). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citations omitted). The Court will also uphold "such inferences and conclusions as the [ALJ] may reasonably draw from the evidence." *Mark v. Celebrezze*, 348 F.2d 289, 293 (9th Cir. 1965). If the evidence supports more than one rational interpretation, a reviewing court must uphold the ALJ's decision. *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984).

## IV. <u>ANALYSIS</u>

The Court addresses each of Mr. Blakely's challenges to the ALJ's decision in turn.

**A. Medical Opinion of Jameson Lontz, Ph.D.**

Mr. Blakely claims that the ALJ erroneously rejected the examining medical opinion of Jameson Lontz. ECF No. 17 at 6. Mr. Blakely also contends that the ALJ "further erred in failing to develop the record as recommended by Dr. Lontz." ECF No. 17 at 9.

"In disability benefits cases . . . physicians may render medical, clinical opinions, or they may render opinions on the ultimate issue of disability — the claimant's ability to perform

work." *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014) (alteration in original). There are three types of physicians: treating physicians, examining physicians, and non-examining physicians. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). The ALJ must provide "clear and convincing" reasons for rejecting an examining physician's opinions and may not reject such opinions without providing "specific and legitimate reasons" supported by "substantial evidence" in the record. *Id.* "An ALJ can satisfy the substantial evidence requirement by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Garrison*, 759 F.3d at 1012 (internal quotation marks omitted).

On February 26, 2015, Dr. Jameson C. Lontz, Ph.D., conducted a neuropsychological evaluation. AR 365-371. In the resulting report, Dr. Lontz diagnosed Mr. Blakely with "[m]ild neurocognitive disorder, due to traumatic brain injury, without behavioral disturbance, mild." AR 370. Dr. Lontz's major findings were as follows:

> Results indicated generally reduced intellectual performances with relatively high perceptual reasoning abilities alongside generally low average memory abilities. Academic performances were within the low average range. Significant attention and concentration confound was indicated. Significant deficits within the sensorimotor and language domains were found. However, executive functions appeared to be within normal limits.

AR 365.

Under the portion of the report entitled "Recommendations" Dr. Lontz included a list of 12 suggestions, including the following:

> 2) Cognitive behavioral therapy to address mood instability that results from ongoing residuals due to what is purported to be *moderate* traumatic brain injury.

3) Psychiatric consult to determine ongoing candidacy for mood stabilizing medication that can address the symptoms outlined in this report.
   a. As part of that consult, the examinee may also want to consider a stimulant medication that allows for better attention and concentration.
   . . . .
9) Should the examinee elect a return to work in a capacity (which would be relatively reduced compared to his former functioning), frequent breaks of short duration are recommended (e.g., 15 minute breaks every 60-90 minutes during the workday).
   . . . .
11) Occupational and speech therapies are recommended so as to assess functional limitations, and to develop and implement compensatory strategies (e.g., daily planner, schedule) that will assist the examinee toward improved self-management skills.

AR 370.

The ALJ stated that Dr. Lontz's opinion "supports limiting the claimant to simple routine work and reducing stress by limiting social interaction," and the ALJ afforded that opinion significant weight. AR 29. The ALJ also found, however, that the "duration of breaks opined by Dr. Lontz is not supported by the medical evidence of record. Although the claimant may need breaks, the evidence regarding the frequency of seizures and cognitive functioning supports no more than brief breaks. As such, this portion of Dr. Lontz's opinion is given lesser weight." AR 29.

1.  <u>Length of Recommended Work Break</u>

Mr. Blakely argues that the ALJ "rejected only that portion of the opinion that would indicate an inability to engage in competitive employment — namely, Dr. Lontz's specific determination that Mr. Blakely would require 15 minute breaks every 60-90 minutes during the workday." ECF No. 17 at 6. According to Mr. Blakely, "the ALJ's

interpretation mischaracterizes the nature of his impairments and is unsupported by the medical record." ECF No. 19 at 3.

First, it is worth noting the language in Dr. Lontz's report does not indicate a clear need for Mr. Blakely to take 15-minute breaks in order to be able to work. Instead, the 15-minute duration is provided as an example of what might constitute the recommended "frequent breaks of short duration." AR 370. An ALJ "may rationally rely on specific imperatives regarding a claimant's limitations, rather than recommendations." *Rounds v. Comm'r Soc. Sec. Admin.*, 807 F.3d 996, 1006 (9th Cir. 2015). Thus, the ALJ was not required to treat this parenthetical illustration as an opinion regarding Mr. Blakely's employment limitations.

Second, to the extent the example of a 15-minute break could be considered to constitute Dr. Lontz's "opinion," that opinion appears to be inconsistent with the opinion of another acceptable medical source. During the May 14, 2015 hearing, Dr. Ronald Devere, a neurologist, pointed out that the neuropsychology evaluation needs to be viewed in the context of Mr. Blakely's activities of daily living and the history of comments made by Mr. Blakely's treating physicians. AR 47. Upon consideration of everything before him, Dr. Devere opined that Mr. Blakely suffered from only mild cognitive impairment. AR 42–47.

Consistent with Dr. Devere's opinion and testimony, the ALJ noted that the treating records throughout 2014 "show few, if any, complaints of impairment related to his mental impairments. The claimant's treatment history shows little mention of mood difficulties

and minimal, if any treatment for these. However, the undersigned has considered these impairments given their intersection with his mild cognitive difficulties." AR 28 (internal record citations omitted). Thus, the ALJ pointed to specific and legitimate reasons — which were supported by substantial evidence on the record — for her conclusion that frequent 5-minute breaks adequately reflected Mr. Blakely's residual functional capacity.

Lastly, assuming arguendo that the ALJ erred in determining that 5-minute breaks would be sufficient, Mr. Blakely has not shown any resulting harm. At the hearing, when the hypothetical given to the vocational expert was changed to reflect a break duration of 15 minutes, the vocational expert still opined that — although it was a close call — a cafeteria attendant employer would retain the employee. Thus, even if Mr. Blakely required frequent 15-minute breaks, the expert testimony in the record supports finding that Mr. Blakely can perform a significant number of jobs that exist in the national economy.

2.   <u>Further Development of the Record</u>

Mr. Blakely argues that Dr. Lontz "recommended evaluations to determine the limitations from Mr. Blakely's mood disorders, and evaluations from an occupational and speech therapist to assess functional limitations based on those impairments." ECF No. 17 at 9. Contrary to Mr. Blakely's contentions, however, Dr. Lontz did not recommend developing the record any further, nor did his recommendations suggest that further record development was necessary. Looking at Dr. Lontz's recommendations, it is clear that each of the

suggested additional consultations were intended to provide Mr. Blakely with a treatment plan; they did not necessarily call for further diagnosis or clarification.

**B.    Opinion of Jared Holman, A.R.N.P.**

In her decision, the ALJ stated,

> On April 29, 2013, Jared Homan, A.R.N.P., opined the claimant could perform light work. He opined the claimant's epilepsy and hemiplegia would cause mild limitations in functioning. Additionally, he noted the claimant's conductive hearing loss would cause moderate limitations in the claimant's ability to hear. Mr. Holman's opinion suggests the claimant retains the ability to perform some work. The medical evidence does not support significant limitations based on hearing loss and does not support the degree of exertional limitation opined by Mr. Holman. As such, his opinion is given lesser weight.

AR 28.

Mr. Blakely claims that the ALJ "erroneously rejected the treating medical opinion of Jared Holman, A.R.N.P." ECF No. 17 at 10. Mr. Blakely argues that although Mr. Holman is not an "acceptable medical source," the ALJ was nevertheless required to provide legally sufficient reasons to reject his opinion. ECF No. 17 at 11.

As an initial matter, under the Social Security regulations, "only licensed physicians and certain other qualified specialists are considered acceptable medical sources." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (internal quotes omitted). Medical professionals such as nurse practitioners and physical therapists are not considered "acceptable medical sources," and their opinions are not entitled to the same deference as acceptable medical sources. 20 C.F.R. § 404.1513(a), (d); *see also Huff v. Astrue*, 275 F. App'x 713, 716 (9th Cir. 2008) (explaining that the "ALJ was entitled to give the

physical therapist's opinion less weight" when the opinion "contradicted the findings of other acceptable medical sources in the record, and the ALJ properly relied on the acceptable medical sources"). Still, the opinions of "other sources," such as an A.R.N.P., may be used to "show the severity of [the claimant's] impairment(s) and how it affects [the claimant's] ability to work," 20 C.F.R. § 404.1513(d).

    1.   <u>Hearing Loss</u>

    Mr. Blakely claims that the ALJ erred because she "wholly disregarded" an audiometer test conducted by A.R.N.P. Holman in April 2013. ECF No. 17 at 12. That test indicated that Mr. Blakely has no hearing in his left ear. AR 319.

    The record shows that Mr. Blakely does have hearing loss in his left ear and consistently reported as much. *See, e.g.*, AR 221, 316, 332. That said, even Mr. Blakely's latest January 2015 hearing test shows that his overall hearing is adequate, and does not meet the Social Security standards for hearing loss not treated with a cochlear implant. *See* AR 589 ("Word recognition ability was great in the right ear at 98% correct. Results show left sided deafness. We discussed amplification options . . . to help him hear better after medical clearance.").[2] Further the medical evidence on the record, as a

---

[2] To meet the relevant listing for hearing loss, tests must show either
    A. An average air conduction hearing threshold of 90 decibels or greater in the better ear and an average bone conduction hearing threshold of 60 decibels or greater in the better ear (see 2.00B2c).
    OR
    B. A word recognition score of 40 percent or less in the better ear determined using a standardized list of phonetically balanced monosyllabic words (see 2.00B2e).

whole, is inconsistent and suggests that Mr. Blakely's hearing loss

did not significantly impact his employability. *See, e.g.*, AR 200

(indicating Mr. Blakely had no difficulty hearing the interviewer);

AR 433 (recording "negative" for hearing loss during September 2013

office visit); AR 458, 460 (indicating in the same report both that

Mr. Blakely had "extreme" hearing loss and that his hearing in each

ear was "grossly intact"). Therefore, the ALJ did not err in finding

that "the medical evidence does not support *significant limitations*

based on hearing loss." AR 28 (emphasis added).

### 2. Light-Work Limitation

Mr. Blakely claims that the ALJ disregarded clinical findings

from a March 2014 examination supporting A.R.N.P. Holman's opinion

that Mr. Blakely is limited to performing light exertional work. Mr.

Blakely therefore argues that the record does not support the ALJ's

finding that Mr. Holman's April 2013 opinion conflicts with other

medical evidence in the record.

As the ALJ noted, A.R.N.P. Holman's opinion in April 2013 was

that Mr. Blakely could perform "light work;" that is, "lift 20 pounds

maximum and frequently lift or carry up to 10 pounds, able to walk or

stand six out of eight hours per day, and able to sit and use pushing

or pulling arm or leg movements most of the day." AR 317. However,

the ALJ also noted that only two months earlier, another examining

provider opined that Mr. Blakely was capable of heavy work — able to

lift 100 pounds maximum and frequently lift or carry up to 50 pounds —

---

*See Exertional and Nonexertional Limitations*, DI 34001.012, Social Security
Administration Program Operations Manual System,
http://policy.ssa.gov/poms.nsf/lnx/0434001012.

and predicted that this would remain the case "life long" with available medical treatment. AR 28, 314. Thus it was not improper for the ALJ to conclude that Mr. Holman's opinion was contradicted by other evidence in the record.

Here, again, the medical records are inconsistent, but generally indicate that Mr. Blakely has some right-side weakness. *See, e.g.*, AR 459 ("Negative for dizziness, extremity weakness, gait disturbance . . . ."), AR 461 ("Gait is right side weakness . . . [patient] with right side paralysis."), AR 521 (recording "negative" for muscle weakness). The ALJ reasonably interpreted the medical evidence to conclude that Mr. Blakely's right-side weakness is serious enough to prevent him from performing heavy work, but not so severe as to limit Mr. Blakely to only light work. Thus, the record contains substantial evidence to support the ALJ's determination that Mr. Blakely was capable of lifting 40 pounds occasionally and 20 pounds frequently, *see* AR 25, and it was not error for the ALJ to reject the conflicting portion of Mr. Holman's opinion.

## C. Credibility Determination as to Mr. Blakely

Mr. Blakely claims that the ALJ discredited his symptom testimony without providing legally sufficient reasons for doing so. ECF No. 17 at 13. Mr. Blakely argues that "the ALJ wholly disregarded that the objective medical evidence comports with Mr. Blakely's reported symptoms." ECF No. 17 at 15.

A two-step analysis is used by the ALJ to assess whether a claimant's testimony regarding subjective pain or symptoms is credible. *Garrison*, 759 F.3d at 1014. Step one requires the ALJ to

determine whether the claimant presented objective medical evidence of an impairment, which could reasonably be expected to produce some degree of the pain or other symptoms alleged. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007); *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996). Objective medical evidence of pain or fatigue, or the severity thereof, need not be provided by the claimant. *Garrison*, 759 F.3d at 1014.

If the claimant satisfies the first step of this analysis, and there is no evidence of malingering, the ALJ must accept the claimant's testimony about the severity of his symptoms unless the ALJ provides specific, clear, and convincing reasons for rejecting the claimant's symptom-severity testimony. *Id.* An ALJ need not believe a claimant's every allegation of pain or non-exertional impairment. *Orn v. Astrue*, 495 F.3d 625, 635 (9th Cir. 2007). To discredit a claimant's testimony after finding that a medical impairment exists, however, "the ALJ must provide specific, cogent reasons for the disbelief." *Id.* (internal quotation marks omitted). In weighing a claimant's credibility, an ALJ may consider "inconsistencies in testimony or between testimony and conduct, daily activities, and unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment." *Orn v. Astrue*, 495 F.3d 625, 636 (9th Cir. 2007) (internal quotation marks omitted).

In this case, the ALJ found Mr. Blakely's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but went on to find that his "statements concerning the intensity, persistence and limiting effects of these symptoms are not

entirely credible for the reasons explained in this decision." AR 26. The ALJ noted a treating physician's report from November 2014 that stated that Mr. Blakely demonstrated normal speech, an "unremarkable" gait, normal muscle tone, and "strength is 5/5 in the upper and lower limbs." AR 27, 363. The ALJ pointed out the general lack of complaints and treatment relating to "cognitive or physical impairment related to his seizures," "impairment related to his mental impairments," and "mood difficulties." AR 28. The ALJ also mentioned that "the medical evidence of record does not indicate a significant difficult managing appointments," and that this "is inconsistent with his complaints of problems concentrating and needing reminders." AR 28.

The ALJ provided specific, clear, and convincing reasons to support her conclusion that "the medical records do not support the frequency and functional limitations endorsed by the claimant." AR 28. The ALJ acted within her discretion in weighing Mr. Blakely's credibility.

## V.   CONCLUSION

For the reasons outlined above, the Court holds that the ALJ's finding of nondisability is both reasonable and supported by substantial evidence in the record. The Court therefore denies Mr. Blakely's Motion for Summary Judgment and grants the Commissioner's Motion for Summary Judgment.

Accordingly, **IT IS HEREBY ORDERED**:

1. Plaintiff's Motion for Summary Judgment, **ECF No. 17**, is **DENIED**.

2.  The Commissioner's Motion for Summary Judgment, **ECF No. 18**, is **GRANTED**.

3.  The Clerk's Office is to enter **JUDGMENT** in favor of the Commissioner.

4.  The case shall be **CLOSED**.

**IT IS SO ORDERED.**  The Clerk's Office is directed to enter this Order and provide copies to all counsel.

**DATED** this  23rd  day of August 2017.

s/Edward F. Shea

_____

EDWARD F. SHEA
Senior United States District Judge
